UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| GREAT AMERICAN DUCK RACES, INC., ) | |
| ) | |
| Plaintiff, ) | 2:12-cv-00436 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| INTELLECTUAL SOLUTIONS, INC. ) *et al.,* ) | [Re: Motion at Docket 14] |
| ) | |
| Defendants. ) | |

## I.  MOTION PRESENTED

At docket 14, defendants Intellectual Solutions, Inc. ("Intellectual Solutions"), Claypool Resources, LLC ("Claypool"), Mervin Dayan, Vivian Dayan, Maurice Dayan, and Jennifer Dayan (collectively "defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(2) to be dismissed for lack of personal jurisdiction.  Plaintiff Great American Duck Races, Inc. ("plaintiff" or "Great American") opposes the motion at docket 21.  Defendants reply is at docket 24.  Oral argument was requested but would not assist the court.

## II.  BACKGROUND

Great American is an Arizona corporation that manufactures and sells pool and spa products.  One of its products is the Underwater Light Show ("ULS"),[1] which creates an elaborate light display in swimming pools.  ULS is sold at many retailers, including Target and Walmart.  Great American is the exclusive licensee of two patents–United

---

[1]Plaintiff also manufactures and sells the Underwater Light Show & Fountain.

1   States Patent Number 7,413,319 and United States Patent Number 7,717,582–both
2   entitled "METHOD AND SYSTEM FOR UNDERWATER LIGHT DISPLAY," and both of
3   which contain disclosures pertaining to the ULS.  Plaintiff maintains that defendants
4   have offered for sale virtually identical copies of ULS products that infringe on both
5   patents.  The allegedly infringing products are in boxes displaying the GOOD TIMES
6   mark.

7        Intellectual Solutions is a Delaware corporation with its principal place of
8   business in New Jersey.  It is an intellectual property holding company.  It owns the
9   GOOD TIMES mark.  Intellectual Solutions licenses the GOOD TIMES mark to
10  Claypool.  Claypool is a limited liability company organized under Delaware law with its
11  principal place of business in New Jersey.  Claypool imports the allegedly infringing
12  products into the United States and sells them to ASAP.  ASAP sells the allegedly
13  infringing products to retailers.

14       Intellectual Solutions, Claypool, and ASAP are each owned by Vivian and
15  Jennifer Dayan.  Their respective husbands, Mervin and Maurice Dayan, have been
16  delegated managerial authority over each company.  Maurice Dayan is the son of
17  Mervin and Vivian Dayan.

18       Great American filed suit in federal court asserting claims against ASAP,
19  Intellectual Solutions, Claypool, Mervin Dayan, Vivian Dayan, Maurice Dayan, and
20  Jennifer Dayan.  Plaintiff has asserted two claims for patent infringement, and one state
21  law claim for unfair competition.

22              **III.  STANDARD OF REVIEW**

23       "Where a defendant moves to dismiss a complaint [pursuant to Federal Rule of
24  Civil Procedure 12(b)(2),] for lack of personal jurisdiction, the plaintiff bears the burden
25  of establishing that a court has personal jurisdiction over a defendant."[2]  Where the
26  motion is based only upon written materials, rather than an evidentiary hearing, the

27  _____

28       [2]*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

-2-

1  plaintiff is required only to make a prima facie showing of personal jurisdiction.[3]
2  Uncontroverted allegations in the complaint are taken as true, and conflicts between
3  parties over statements contained in affidavits are resolved in favor of the plaintiff.[4]

4        "Where, as here, there is no applicable federal statute governing personal
5  jurisdiction, the district court applies the law of the state in which the district court sits."[5]
6  Arizona Rule of Civil Procedure 4.2(a) authorizes the exercise of jurisdiction to the
7  extent permitted by federal due process requirements.[6]  Due process requires that the
8  defendant "have certain minimum contacts with [the forum] such that the maintenance
9  of the suit does not offend traditional notions of fair play and substantial justice."[7]

## IV.  DISCUSSION

11       Defendants concede in their response that Great American has made a prima
12 facie case that the court has personal jurisdiction over Intellectual Solutions.[8]
13 Accordingly, the only issues are whether the court has personal jurisdiction over
14 Claypool and the individual defendants.

15       Federal Circuit law governs personal jurisdiction over defendants to claims
16 "intimately related to patent law."[9]  Personal jurisdiction over defendants to other claims
17 is governed by the law of the regional circuit.[10]  Plaintiff has asserted two claims for
18 patent infringement and one state law claim for unfair competition.

19

---

20    [3]*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

21    [4]*Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

22    [5]*Fred Martin Motor Co.*, 374 F.3d at 800.

23    [6]Ariz. R. Civ. P. 4.2(a).

24    [7]*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

25
26    [8]Doc. 24 at 3 n.1; *see, e.g.*, *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

27    [9]*Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

28    [10]*Id.*

1    General jurisdiction arises where a defendant has "substantial" or "continuous
2    and systematic" contacts with the forum and therefore "can be haled into court in that
3    state in any action, even if the action is unrelated to those contacts."[11]  None of the
4    defendants' contacts with Arizona are so substantial, or continuous and systematic that
5    general jurisdiction may be exercised.

6    Specific jurisdiction exists where "(1) the defendant has performed some act or
7    consummated some transaction within the forum or otherwise purposefully availed
8    himself of the privileges of conducting activities in the forum, (2) the claim arises out of
9    or results from the defendant's forum-related activities, and (3) the exercise of
10   jurisdiction is reasonable."[12]

11   A defendant purposefully avails itself of a forum if it "delivers its products into the
12   stream of commerce with the expectation that they will be purchased by consumers in
13   the forum."[13]  Under Federal Circuit law, personal jurisdiction may be exercised over a
14   defendant who "purposefully ship[s] products through an established distribution
15   channel with the expectation that those products w[ill] be sold in the forum."[14]

16   **A. Claypool**

17   Defendants argue that Claypool is a licensee of Intellectual Solutions that imports
18   goods from China under the GOOD TIMES mark, and then sells them to ASAP, who in

---

20   [11]*Bancroft & Masters, Inc. v. Augusta Nat., Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)
21   (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)); *see also*
     *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362–63 (Fed. Cir. 2006).
22
23   [12]*Id.*

24   [13]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

25   [14]*Nuance Comm., Inc. v. Abbyy Software*, 626 F.3d 1222, 1233 (Fed. Cir. 2010).
26   Defendants argue that the *Nuance* court relied on the foreign defendant's statements in trade
     magazines that it would "conquer" the U.S. market.  Doc. 24 at 8.  Defendants are mistaken–the
27   controlling consideration was that the foreign defendant "purposefully ship[ped] the accused
     software products into [the forum] through an established distribution channel, with the
28   expectation that copies of those products [would] be sold in [the forum]."  *Nuance*, 626 F.3d at
     1234.

1  turn sells them to wholesalers and retailers in the United States.  Defendants maintain

2  that Claypool has no contacts with Arizona, could not anticipate being haled into court in

3  Arizona, and that importing goods with the GOOD TIMES mark into the United States

4  does not constitute activity that is purposely directed at Arizona.

5        Plaintiff argues that sale of the imported products to an affiliated

6  company–ASAP–that it knew would distribute the products to Arizona, constitutes

7  purposeful availment.  Claypool does not dispute that it imports the allegedly infringing

8  products into the United States or sells those products to ASAP.  Because Claypool and

9  ASAP have the same owners and managers, Claypool knew that the allegedly infringing

10 products would be sold in Arizona.  Because plaintiff's claims arise out of the allegedly

11 infringing products presence in Arizona, plaintiff has made a prima facie showing that

12 Claypool is subject to personal jurisdiction in Arizona.

13 **B.  Individual Defendants**

14       Each of the individual defendants have submitted declarations stating that they

15 have no personal contacts with Arizona.[15]  Mervin and Maurice Dayan state that they

16 have never resided or owned property in Arizona.  They argue that plaintiff's allegations

17 do not support the proposition that either one purposefully directed any conduct at

18 Arizona or its residents.  Vivian and Jennifer Dayan make identical arguments and add

19 that neither has been involved in the management or operation of Intellectual Solutions,

20 Claypool, or ASAP.

21       Plaintiffs respond that personal jurisdiction over each of the individual defendants

22 is proper on a veil-piercing theory.  In Arizona, "an officer, director or shareholder of a

23 corporation may not be held liable for the torts of the corporation unless (1) he

24 authorized or participated in the actions or (2) the corporation is an alter ego."[16]

25

26        [15]Docs. 14-1, 14-2, 14-3, 14-4.

27

28       [16]*Maloof v. Raper Sales, Inc.*, 557 P.2d 522, 525 (Ariz. 1976).  *See also Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393–94 (9th Cir. 1984).

1   "In determining whether alter ego liability applies, [federal courts] apply the law of

2   the forum state."[17]  In Arizona, "alter-ego status . . . exist[s] when there is such unity of

3   interest and ownership that the separate personalities of the corporation and owners

4   cease to exist."[18]  Factors bearing on this question include: failure to maintain corporate

5   formalities; undercapitalization; commingling of corporate and personal finances;

6   plaintiff's lack of knowledge about a separate corporate existence, and diversion of

7   corporate property for personal use.[19]

8        Because plaintiff need only make a prima facie showing of personal jurisdiction,

9   and because factual conflicts are resolved in plaintiff's favor, it is only necessary to

10  evaluate plaintiff's evidence that alter ego status exists.  Plaintiff has presented

11  evidence that Intellectual Solutions had not filed an annual tax report since 2008 and

12  that its status was void as of March 1, 2011.[20]  Defendants respond that Intellectual

13  Solutions paid its 2009 and 2010 taxes on March 2, 2012, and reinstated its

14  charter–defendants have produced evidence that Intellectual Solutions is currently in

15  good standing.  Regardless of whether its failure to pay taxes was an "oversight,"[21] it is

16  evidence that Intellectual Solutions has failed to observe corporate formalities.  It is also

17  undisputed that the Dayan wives own Intellectual Solutions.

18       Based on the plaintiff's allegations in the complaint, and the limited evidence that

19  has been provided with the parties' briefing, the court is unable to conclude whether

20  veil-piercing is appropriate.  In deciding a motion under Rule 12(b)(2), "[a] court may

21

22       [17]*In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010).

23       [18]*Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1971).

24       [19]*See Deutsche Credit Corp. v. Case Power & Equipment Co.*, 876 P.2d 1190, 1195
25  (Ariz. Ct. App. 1994).

26       [20]Doc. 21-6 at 2.  *See also* 8 Del. C. § 510 (if a corporation fails to pay taxes "the charter
    of the corporation shall be void, and all powers conferred by law upon the corporation are
27  declared inoperative").

28       [21]Doc. 24 at 4.

1    order discovery."[22]  "Discovery may appropriately be [ordered] where pertinent facts

2    bearing on the question of jurisdiction are controverted or where a more satisfactory

3    showing of the facts is necessary."[23]  A more satisfactory showing that Intellectual

4    Solutions–or any of the other corporate entities–is the alter ego of the individual

5    defendants is necessary in this instance.

6                                    **V.  CONCLUSION**

7            For the reasons above, it is **ORDERED** that the parties shall have 49 days to

8    conduct limited discovery regarding the alleged alter ego status of ASAP, Claypool, and

9    Intellectual Solutions.

10           Defendant's motion at docket 14 to dismiss Claypool for lack of personal

11   jurisdiction pursuant to Rule 12(b)(2) is **DENIED**.  With respect to Mervin Dayan, Vivian

12   Dayan, Maurice Dayan, and Jennifer Dayan, the motion is **DENIED** without prejudice to

13   renewal after the parties have engaged in the limited discovery ordered above.

14           DATED this 31st day of July 2012.

15

16                                              /s/ JOHN W. SEDWICK
                                           UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26
       [22]*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *see also Data Disc, Inc. v.*
27   *Systems Technology Assocs.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

28           [23]*Data Disc*, 557 F.2d at 1285 n.1.

                                            -7-