1
2
3
4          **UNITED STATES DISTRICT COURT**
5             **DISTRICT OF ARIZONA**
6
7

8   **Great American Duck Races, Inc.,**              )
9              **Plaintiff,**                          )        **2:12-cv-00436 JWS**
                                                        )
10          **vs.**                                    )        **ORDER AND OPINION**
                                                        )
11  **Intellectual Solutions, Inc., ASAP**             )
    **Sales, LLC; Claypool Resources,**                )
12  **LLC; Mervin Dayan; Vivian Dayan;**               )
    **Maurice Dayan; Jennifer Dayan,**                 )        **[Re: Motion at Docket 58]**
13                                                      )
              **Defendants.**                          )
14  _____ )

15                    **I.  MOTION PRESENTED**

16          At docket 58, defendants Mervin Dayan, Vivian Dayan, Maurice Dayan, and

17  Jennifer Dayan (collectively "the Dayans") move pursuant to Rule 12(b)(2) to be

18  dismissed for lack of personal jurisdiction.  Plaintiff Great American Duck Races, Inc.

19  ("plaintiff" or "Great American") opposes at docket 59.  The Dayans' reply at docket 64.

20  Oral argument was heard on February 25, 2013.

21                     **II.  BACKGROUND**

22          Great American is an Arizona corporation that manufactures and sells pool and

23  spa products.  One of its products is the Underwater Light Show ("ULS"), which creates

24  an elaborate light display in swimming pools.  ULS is sold at many retailers, including

25  Target and Walmart.  Great American is the exclusive licensee of two patents–United

26  States Patent Number 7,413,319 and United States Patent Number 7,717,582–both

27  entitled "METHOD AND SYSTEM FOR UNDERWATER LIGHT DISPLAY," and both of

28

1    which contain disclosures pertaining to the ULS.  Plaintiff maintains that the defendants

2    in this case have offered for sale virtually identical copies of ULS products that infringe

3    on both patents.  The allegedly infringing products are sold in boxes displaying the

4    GOOD TIMES mark.

5        Intellectual Solutions, Inc. ("Intellectual Solutions") is a Delaware corporation with

6    its principal place of business in New Jersey.  It is an intellectual property holding

7    company.  It owns the GOOD TIMES mark.  Intellectual Solutions licenses the GOOD

8    TIMES mark to Claypool, LLC ("Claypool").  Claypool is a limited liability company

9    organized under Delaware law with its principal place of business in New Jersey.

10   Claypool imports the allegedly infringing products into the United States and sells them

11   to ASAP Sales, LLC ("ASAP").  ASAP sells the allegedly infringing products to retailers.

12       Intellectual Solutions, Claypool, and ASAP are each owned by Vivian and

13   Jennifer Dayan.  Their respective husbands, Mervin and Maurice Dayan, have been

14   delegated managerial authority over each company.  Maurice Dayan is the son of

15   Mervin and Vivian Dayan.

16       Great American filed suit in federal court asserting claims against ASAP,

17   Intellectual Solutions, Claypool, Mervin Dayan, Vivian Dayan, Maurice Dayan, and

18   Jennifer Dayan.  Plaintiff has asserted two claims for patent infringement, and one state

19   law claim for unfair competition.

20       Intellectual Solutions, Claypool, and the Dayans previously moved the court for

21   dismissal based on lack of personal jurisdiction.  After briefing on the issue, Intellectual

22   Solutions conceded that plaintiff had made a prima facie showing that it is subject to

23   personal jurisdiction in Arizona.  The court ruled that plaintiff had also made a prima

24   facie showing that Claypool is subject to personal jurisdiction in Arizona.  However, the

25   court found that it did not have enough evidence to determine whether it could exercise

26   personal jurisdiction over the Dayans based on a theory of veil piercing as plaintiff

27

28

1   argued, and thus, the court ordered limited discovery on the issue.[1]  After a period of

2   limited discovery, the Dayans filed the current motion to dismiss.  Plaintiff defends

3   against the motion by filing under seal evidence in support of its veil-piercing theory at

4   docket 63.

5                        ### III.  STANDARD OF REVIEW

6        "Where a defendant moves to dismiss a complaint pursuant to Federal Rule of

7   Civil Procedure 12(b)(2), for lack of personal jurisdiction, the plaintiff bears the burden of

8   establishing that a court has personal jurisdiction over a defendant."[2]  Where the motion

9   is based only upon written materials, rather than an evidentiary hearing, the plaintiff is

10  required only to make a prima facie showing of personal jurisdiction.[3]  This prima facie

11  burden holds even after the court has ordered limited jurisdictional discovery.[4]

12  Uncontroverted allegations in the complaint are taken as true, and conflicts over

13  statements contained in affidavits are resolved in favor of the plaintiff.[5]

14       "Where, as here, there is no applicable federal statute governing personal

15  jurisdiction, the district court applies the law of the state in which the district court sits."[6]

16  Arizona Rule of Civil Procedure 4.2(a) authorizes the exercise of jurisdiction to the

17  extent permitted by federal due process requirements.[7]  Due process requires that the

18  defendant "have certain minimum contacts with [the forum] such that the maintenance

19

20  _____

21       [1]Doc. 31.

22       [2]*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

23       [3]*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

24       [4]*Bauman v. Daimler Chrysler Corp.*, 644 F.3d 909, 918-19 (9th Cir. 2011) (applying the
25  prima facie burden after jurisdictional discovery).

26       [5]*Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

27       [6]*Fred Martin Motor Co.*, 374 F.3d at 800.

28       [7]Ariz. R. Civ. P. 4.2(a).

of the suit does not offend traditional notions of fair play and substantial justice."[8]
Federal courts that have considered the issue conclude that "it is compatible with due
process for a court to exercise personal jurisdiction over an individual . . . that would not
ordinarily be subject to personal jurisdiction in that court when the individual . . . is an
alter ego . . . of a corporation that would be subject to personal jurisdiction in that court.[9]
The theory behind finding personal jurisdiction in such alter-ego situations is that,
because the corporation and individual are considered to be the same entity, the
jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of
the due process analysis.[10]

## IV.  DISCUSSION

Plaintiff asserts that Intellectual Solutions, Claypool, and ASAP are alter-egos of
the Dayans and that the Dayans should be kept in the lawsuit and held liable for the
actions of their companies.  In diversity actions, federal courts apply state law when
evaluating alter-ego status.[11]  In Arizona, "alter-ego status . . . exist[s] when there is
such unity of interest and ownership that the separate personalities of the corporation
and owners cease to exist."[12]  Factors bearing on this question include: payment of
salaries and expenses of the corporation by shareholders; failure to maintain corporate
formalities; undercapitalization; commingling of corporate and personal finances;
plaintiff's lack of knowledge about a separate corporate existence; owners' making of

[8]*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

[9]*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir.2002); *see also
Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357,
362 (6th Cir.2008); *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591
(9th Cir.1996).

[10]*Patin*, 294 F.3d at 653.

[11]*Hambleton Bros. Lumber Co. v. Balkin Enterprises., Inc.,* 397 F.3d 1217, 1227 (9th Cir.
2005).

[12]*Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972).

-4-

1  interest-free loans to the corporation; and diversion of corporate property for personal
2  use.[13]

3      A finding of alter-ego status is not enough for the court to be able to disregard the
4  corporate form under Arizona law.  In order to impose liability on an individual through
5  veil piercing, there must also be a showing that the observance of the corporate form
6  would sanction a fraud or promote injustice.[14]  Thus, plaintiff must also set forth at least
7  a prima facie showing that failure to include the Dayans in this case would create an
8  injustice.

9      The court notes that unlike Intellectual Solutions, which is a corporation, Claypool
10  and ASAP are limited liability companies.  Both parties assume that veil piercing under
11  an alter-ego theory applies to limited liability companies, but "it has not been explicitly
12  determined under Arizona law whether a party may pierce the [LLC] veil."[15]  Regardless,
13  this court concludes that the rationale behind piercing the veil of a corporation would
14  also apply to an LLC given the similar liability shields that are provided by corporations
15  and LLCs to their respective owners.[16]

16  **A. Alter Ego Status**

17      Based on the deposition excerpts and documents filed in support of its
18  opposition, plaintiff has made at least a prima facie showing that Intellectual Solutions,
19  Claypool, and ASAP are the alter egos of the Dayans based on a failure to maintain
20  corporate formalities; the Dayans' lack of knowledge about the separate corporate

21

22

23  [13]*See Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994).

24  [14]*Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991)

25
26  [15]*All Custom Exteriors, Inc. v. Bilyea*, No. 1-CA-CV-10-0702, 2011 WL 5964528, at *4 (Ariz. Ct. App. Nov. 29, 2011).

27  [16]*NetsJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168 (2d Cir. 2008)
28  (applying the principles of corporate veil piercing to LLCs under Delaware law and noting that emerging case law illustrates that LLC veil piercing and corporate veil piercing are similar).

existences; undercapitalization; members making interest-free loans to the corporate entities; and commingling of corporate and personal finances.

**1. Failure to maintain corporate formalities/lack of basic information**

The three companies are blurred both in the minds of the Dayans and in practice. The Dayans' understanding of who manages what company is muddled.  Vivian testified that both Mervin and Maurice manage all three companies, but the evidence shows that Mervin is the designated manager of Intellectual Solutions and Claypool, and Maurice is the designated manager of ASAP.[17]  The Dayans' answers to plaintiff's interrogatories state that Mervin is the designated manager of Intellectual Solutions and is assisted from time to time by Maurice, but Maurice's affidavit does not mention that he does any work for Intellectual Solutions and only says that he has management responsibilities for ASAP.[18]  Mervin's affidavit says he is also involved in the management of ASAP, but then he testified at his deposition that he does not do anything for ASAP.[19]  Not only is there a lack of complete understanding about who is in charge of each company, the owners of the companies, Jennifer and Vivian, do not actually know the difference between the three companies.[20]

The evidence shows a blurring of the companies in practice as well.  All three companies share an office.[21]  All three companies are listed as insureds on one commercial property insurance policy, which appears to have been obtained only after the filing of this lawsuit.[22]  The companies share the same financial officer, Warren Sidosky.  Sidosky's affidavit submitted by the Dayans in support of the motion states

[17]Doc. 63, Exh. 6 at 21-22.

[18]Doc. 63, Exh. 8; Doc. 58-3.

[19]Doc. 58-1; Doc. 63, Exh. 4 at 41.

[20]Doc. 63, Exh. 6 at 22; Doc. 63, Exh. 7 at 8.

[21]Doc. 63, Exh. 6 at 10; Doc. 63, Exh.3.

[22]Doc. 63, Exh. 3 (evidence of commercial insurance policy).

that he is the CFO of Intellectual Solutions, but the defendants' answers to plaintiff's interrogatories state that Sidosky is the CFO of Claypool.[23]  Mervin, as the Rule 30(b)(6) representative of Intellectual Solutions, testified during deposition that Sidosky is an employee of Claypool who does work for Intellectual Solutions as needed, but Mervin was not sure if Intellectual Solutions paid Claypool for Sidosky's services to the corporation and did not know how Sidosky was paid for his work.[24]  Maurice, as the Rule 30(b)(6) representative of ASAP, testified during deposition that Sidosky is the accountant for ASAP, even though he admitted that ASAP does not pay Sidosky's salary and does not technically employ Sidosky.[25]  Financial decisions related to Claypool and Intellectual Solutions are often made by Stanley Nasberg, who is the family's financial advisor and not listed as an employee of any of the three companies.[26]

Plaintiff's evidence not only indicates that the Dayans have blurred the boundaries between the corporate entities and do not understand the companies' distinct existences, it shows that they have failed to follow corporate formalities. Intellectual Solutions's Certificate of Incorporation states that an annual meeting of the shareholders shall be held on June 21st of every year and that a secretary must keep minutes of these meetings, but the Dayans could not give details about any meetings and did not provide minutes for any meetings.[27]  Mervin testified that there had been an informal meeting that year, but he could not provide details.  He was not sure if Intellectual Solutions has a secretary or treasurer.[28]  Vivian, one of the owners of

[23]Doc. 58-5; Doc. 63, Exh. 9.

[24]Doc. 63, Exh. 1 at 12-13.

[25]Doc. 63, Exh. 3, at 21-22.

[26]Doc. 63, Exh. 1 at 36, 38; Doc. 63, Exh. 2 at 18.

[27]Doc. 63, Exh. 1.

[28]Doc. 63, Exh. 1 at 9-11.

Intellectual Solutions, testified at her deposition that there have been meetings, but she was not sure when these meetings were held or for what company.[29]

The Dayans also lack a basic understanding about the three companies, despite the fact that they are the owners and managers of the companies.  The owners, Vivian and Jennifer, are not sure what the three companies do and could not describe how the companies are different.[30]  They have never seen financial reports for the companies.[31]  Even the managers of the three companies, Mervin and Maurice, do not know anything about the companies' profits, losses, accounts receivable, or indebtedness.[32]

### 2. Undercapitalization

Plaintiff has put forward enough evidence to make a prima facie case that the three companies were not adequately capitalized upon formation.[33]  Neither the owners, Vivian or Jennifer, nor the managers, Mervin or Maurice, could testify about the initial capitalization of the companies.  Mervin, as the manager of Intellectual Solutions, did not know how much capital Intellectual Solutions had at its formation.[34]  The Dayans' attorney represented on the deposition record that the initial capitalization of Intellectual Solutions was not a lot of money.[35]  As for Claypool, Mervin testified on behalf of Claypool that family and friends gave him money to fund the company, but when testifying on behalf of ASAP, Mervin clarified that he was not sure if he put that money

---

[29]Doc. 63, Exh. 6 at 12.

[30]Doc. 63, Exh. 6 at 22; Doc. 63, Exh. 7 at 8.

[31]Doc. 63, Exh. 6 at 13; Doc. 63, Exh. 7 at 10.

[32]Doc. 63, Exh. 1 at 24, 36, 38; Doc. 63, Exh. 2 at 34-35; Doc. 63, Exh. 3 at 10, 12, 43, 57, 63.

[33]*Norris Chemical Co. v. Ingram*, 679 P.2d 567, 570 (Ariz. Ct. App. 1984) (noting that when determining whether the corporate form should be disregarded the capitalization of a corporation is evaluated at the time that it is established).

[34]Doc. 63, Ex. 1 at 38-40.

[35]Doc. 63, Exh. 1 at 49.

toward ASAP or Claypool.[36]  The Dayans' interrogatory answers state that Vivian and Jennifer capitalized ASAP, but Jennifer could not testify as to whether she made any contribution.[37]  Furthermore, there is evidence that ASAP was formed in 2010 but did not have a bank account until 2011, and as of January 2012, there is evidence that ASAP had little cash on hand.[38]  While not enough to prove undercapitalization in fact, it is enough to meet the requisite prima facie showing, and the Dayans did not submit anything to clarify the capitalization issue.

### 3. Members making interest-free loans to the corporate entities

Mervin testified that Claypool has outstanding loans from friends and family, but he could not provide any details regarding these loans and did not have written documentation about the loans.[39]  He asserted that Claypool owes him money as well, but he could not provide details and did not submit written documentation related to any loans despite plaintiff's request for loan documentation during discovery.[40]  Claypool transfers funds to Intellectual Solutions so that Intellectual Solutions can pay its corporate debts, but there are no loan documents associated with these transfers.[41]  One of Claypool's bank statements shows that Claypool paid $50,000 to Jacob Dayan, Mervin's son, as repayment for a loan Jacob made only three days before the repayment.[42]  Again, there is no written documentation of this loan.  Stanley Nasberg, the family's financial advisor, withdrew $50,000 from Claypool's bank account in what

[36]Doc. 63, Exh. 2 at 18; Doc. 63, Exh. 3 at 10.

[37]Doc. 63 Exh. 10; Doc. 63, Exh. 7 at 9.

[38]Doc. 63, Exh. 10.

[39]Doc. 63, Exh. 2 at 26.

[40]Doc. 63, Exh. 2 at 27.

[41]Doc. 63, Exh. 1 at 35-36.

[42]Doc. 63, Exh. 2 at 43.

1   was documented as partial repayment of a $200,000 loan Nasberg made to the

2   company, but the Dayans did not provide any written documentation of this loan.[43]

3   **4. Commingling of corporate and personal finances**

4   By far the strongest factor weighing in favor of alter-ego status is the pervasive

5   commingling of the companies' finances and the Dayans' personal finances.  Mervin

6   admitted to making personal transfers from Claypool's bank account.[44]  Mervin also

7   testified during his deposition as Claypool's representative that he took money out of

8   Claypool's bank account to give Maurice so Maurice could pay his personal real estate

9   taxes.[45]  Maurice admitted that he would receive money from Claypool on occasions

10  when he asked Mervin or the family's financial advisor for it.[46]  There is also evidence

11  that Maurice's personal American Express bills were paid out of Claypool's bank

12  account.[47]  Maurice testified that transfers to him out of Claypool's accounts were

13  personal loans from Mervin.[48]  Mervin also testified that the various payments to

14  Maurice were loans.[49]  However, in an affidavit filed with the Dayans' reply brief, Mervin

15  says that payments to Maurice were actually business draws.[50]  The affidavit does not

16  specify why Maurice would be taking draws from Claypool if he considers himself

17  employed by ASAP, but regardless, given the standard of review, the court resolves all

18  factual disputes in favor of plaintiff and so the court concludes the transfers to Maurice

19

20  [43]Doc. 63, Exh. 2 at 61.

21  [44]Doc. 63, Exh. 2 at 23.

22  [45]Doc. 63, Exh. 2 at 48.

23  [46]Doc. 63, Exh. 5 at 59.

24

25  [47]Doc. 63, Exh. 2 at 49; Doc. 63, Exh. 5 at 58-59.

26  [48]Doc. 63, Exh. 5 at 57.

27  [49]Doc. 63, Exh. 2 at 47-49.

28  [50]Doc. 64 at ¶ 18.

were personal in nature as suggested by plaintiff's evidence.  Claypool also provided

$50,000 to another one of Mervin's sons, Jacob, as repayment for a mysterious three-

day loan.[51]

Money is freely commingled between companies as well.  As noted above,

Claypool transferred money to Intellectual Solutions so that Intellectual Solutions could

pay its bills.  Claypool also transferred money to inactive companies.  One of these

transfers was to Road Master U.S.A. purportedly to pay for that company's payroll taxes

even though that company was defunct and inactive about two years prior to the

transfer.[52]  It appears that Claypool also covered the payroll taxes for other companies,

such as Development Prop. and Mervin, as manager, could not explain why.[53]

**B. Injustice**

While a closer call, the court concludes that plaintiff has also made a prima facie

showing that failure to include the Dayans in this case would result in injustice.  "The

term injustice or unjust act as used in the Arizona cases is not easy to define."[54]  It really

falls within the realm of equity.[55]  Given the requirement at this stage that plaintiff simply

make a prima facie case for personal jurisdiction, the scales tip in favor of including the

Dayans.  The evidence presented by plaintiff shows that the Dayans use their

companies, particularly Claypool, as personal piggy banks and not like corporate

entities with investors, shareholders/members, and lenders.  The evidence also shows

that not only the Dayans but also third-parties like Nasberg and Sidosky have access to

the companies' assets and can move money from the companies' accounts without

authorization or recourse.  This loose management of company assets works to the

---

[51]Doc. 63, Exh. 2 at 42-44.

[52]Doc. 63, Exh. 2 at 40-41.

[53]Doc. 63, Exh. 2 (Bank Account Statement dated 9/30/11).

[54]*Youngren v. Rezzonico,* 543 P.2d 142, 144 (Ariz. Ct. App. 1976).

[55]*Id.*

detriment of any creditors of the companies, including a judgment creditor such as plaintiff would be were it to obtain a judgment against ASAP, Claypool, or Intellectual Solutions.  Furthermore, based on inferences from bank account statements, the fact that the managers have a complete lack of knowledge about the companies' finances, and the fact that Claypool's tax return for the year 2010 shows that it operated at a substantial loss, even though it paid salaries and wages of more than $1 million to nine employees, the court concludes that plaintiff has put forth enough evidence to make an initial showing that the companies are at least grossly mismanaged and may very well be insolvent, potentially leaving plaintiff without a complete remedy.

## V.  CONCLUSION

Based on the preceding discussion, the Dayans' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is **DENIED**.

DATED this 15th day of March 2013.

_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE